IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY C. WRIGHT, | |
| Plaintiff, | HONORABLE JEROME B. SIMANDLE |
| v. | Civil No. 14-08002 (JBS/AMD) |
| STATE OF NEW JERSEY/DEPARTMENT OF EDUCATION and PETER SHULMAN, in his official and individual capacities | **OPINION** |
| Defendant. | |

APPEARANCES:

Heidi R. Weintraub, Esq.
801 N. Kings Highway
Cherry Hill, NJ 08034
    Attorney for the Plaintiff

Agnes Irene Rymer, Deputy Attorney General
Cheryl A. Citera, Deputy Attorney General
State of New Jersey
Office of the Attorney General
25 Market Street
P.O. Box 112
Trenton, NJ 08625
    Attorneys for the Defendant

**SIMANDLE, Chief Judge:**

**I. INTRODUCTION**

    This matter comes before the Court on the motion of

Defendants the New Jersey Department of Education and Peter

Shulman ("Department of Education" and "Shulman") to dismiss

[Docket Item 6] Plaintiff Anthony Wright's Complaint alleging

gender, race, and age discrimination [Docket Item 1]. Plaintiff, an employee at the Department of Education, was passed over for a promotion and brought suit against the Department of Education and Shulman, who is sued in his official and individual capacity, asserting gender and race discrimination claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 ("Title VII"), and an age discrimination claim under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623.

Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1), Defendants filed a motion to dismiss all claims against Shulman and the ADEA claim against the Department of Education. (Def. Br. [Docket Item 6].) In response to the motion, Plaintiff withdrew the Title VII claims against Shulman (Counts One and Two) but opposed the Defendants' motion with respect to the ADEA claim (Count Three) against both Shulman and the Department of Education. (Pl. Opp'n [Docket Item 8].)

The dispute in this case therefore revolves around the ADEA claim in Count Three. The primary questions that need to be resolved are whether Plaintiff's ADEA claim against the Department of Education is barred by the doctrine of sovereign immunity, and whether Plaintiff's ADEA claim may proceed against Shulman in either his official or individual capacity.

**II. FACTUAL BACKGROUND**

2

The facts of this case are drawn from the complaint and are accepted as true for the purposes of this motion.

Plaintiff Anthony Wright, an African American male over the age of forty, has been employed by the Department of Education for approximately ten years. On June 11, 2012, he applied for a more senior level position within the department, alleging that he "exceeded the qualifications for the position." (Compl. ¶ 7-8.) Out of seventy applicants, forty-three of whom met the minimum educational requirement, Plaintiff was chosen for an interview along with two other candidates. (Id. at ¶ 10.)

Shulman was the Assistant Commissioner and Chief Talent Officer for the Department of Education and was a "close personal friend" of Katherine Westerhold, the Chairperson of the interview panel who conducted the interviews for the position. (Id. at ¶¶ 6, 12.) The Department of Education had developed a set of procedural guidelines for the interviewing process to ensure equal opportunity in employment and prevent discrimination. (Id. at ¶¶ 13-14.) Plaintiff alleges that the procedures were not followed when Shulman, charged with making the ultimate hiring decision, passed over Plaintiff for the promotion and granted the position to Mamie Doyle, a Caucasian female in her late twenties. (Id. at ¶¶ 15-16.) Shulman suggested that Plaintiff split his time assisting Doyle in her new position while also working in his current position. (Id. at

3

¶ 17.) Plaintiff filed a Charge of Discrimination with the New Jersey Division on Civil Rights on or about September 19, 2012, alleging gender and race discrimination under Title VII and age discrimination under the ADEA. (Id. at ¶ 19.) The charge read that within the Department of Education, "there is no presence of minorities; . . . . There has been a long-standing history and established practice of hiring inexperienced and non-qualified individuals to serve in these roles . . . ." (Id. at ¶ 20.) The Equal Employment Opportunity Commission handled the complaint pursuant to a worksharing agreement with the Division of Civil Rights and notified Plaintiff of his right to sue. (Id. at ¶ 21-22.)

## III. LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to Plaintiff, a court concludes that Plaintiff failed to set forth sufficient facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678

4

(2009). However, legal conclusions are not entitled to the same assumption of truth, and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. To determine if a complaint meets the pleading standard, the Court must strip away conclusory statements and "look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement of relief." Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012) (internal quotation marks omitted).

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) must be granted if the court lacks subject matter jurisdiction to hear a claim. In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012). When a defendant files a motion under Rule 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction for the sake of remaining in federal court. Gould Elec., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).[1]

---

[1]  Defendants' motion presents a facial challenge to subject matter jurisdiction. A "facial attack" is "an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or . . . because some other jurisdictional defect is present." Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014). By contrast, a factual challenge makes an argument that the facts of the case do not support the asserted jurisdiction. Id. Unlike a factual attack, in which the court may weigh and consider evidence outside the pleadings and the plaintiff's allegations are not entitled to the presumption of

## IV. DISCUSSION

### 1. ADEA claim against the Board of Education

Several issues in this case are dependent upon the scope of the state sovereign immunity doctrine. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. State sovereign immunity is a jurisdictional bar which deprives federal courts of subject matter jurisdiction. Kimel v. Florida Bd. of Regents, 528 U.S. 62, 73 (2000). Under the Eleventh Amendment, an unconsenting state or state official is immune from suit brought in federal court by citizens of that state or citizens of another state. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). The Department of Education is considered an arm of the state government for purposes of determining sovereign immunity under the Eleventh Amendment. See McCann v. NJ Dept Of Pers., No. 08-5031, 2009 WL 4125372, at *2 (D.N.J. Nov. 17, 2009)

---

truth, a district court reviewing a facial challenge applies the more favorable standard of review under Rule 12(b)(6). Thus, the Court accepts all material allegations as true and construes the alleged facts in favor of the nonmoving party. In re Schering Plough Corp., 678 F.3d 235, 243 (2012) (citing Gould Elec., Inc. v. United States, 220 F.3d 169, 176 (3d Cir.2000) and Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007)).

(ruling that the New Jersey Department of Personnel is an arm of
the state for purposes of the Eleventh Amendment); Farmer v.
Camden City Bd. of Educ., No. 03-685, 2005 WL 984376, at *4
(D.N.J. Mar. 28, 2005) (ruling that the Camden County Board of
Education is an arm of the State of New Jersey).

State sovereign immunity under the Eleventh Amendment is
subject to three exceptions: 1) where Congress abrogates the
state's immunity pursuant to a valid exercise of its Fourteenth
Amendment power; 2) where a state has validly waived its
sovereign immunity and 3) where prospective injunctive relief is
sought against state officials to end continuing or ongoing
violations of federal law. MCI Telecomm. Corp. v. Bell Atl.
Pennsylvania, 271 F.3d 491, 503 (3d Cir. 2001).

Defendants argue in the present case that the Department of
Education must be dismissed from the ADEA claim because Congress
did not abrogate state sovereign immunity in passing the ADEA.
(Def. Reply [Docket Item 10-1] at 2) (citing Kimel, 528 U.S. at
91 ("We hold only that, in the ADEA, Congress did not validly
abrogate the States' sovereign immunity to suits by private
individuals.")). See also Smith v. Sec'y of Dep't of Envtl.
Prot. of Pennsylvania, 540 F. App'x 80, 81 (3d Cir. 2013)
(ruling that the Eleventh Amendment bars damages claims against
the Department of Environmental Protection of Pennsylvania under
the ADEA). Plaintiff does not challenge the applicability of

Kimel; he does not argue that this case falls within the first exception to sovereign immunity. Instead, Plaintiff contends that the Department of Education may have waived sovereign immunity for ADEA claims by accepting federal funding, and argues that he is entitled to discovery to determine whether this is the case. (Pl. Br. [Docket Item 9] at 4-5.)

The dispute thus centers around whether the second exception applies: whether the Department of Education has waived its Eleventh Amendment immunity by unequivocally consenting to suit. College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670, 676 (1999). One way in which a state may consent to federal jurisdiction is by accepting a gift or gratuity from Congress to which it is not otherwise entitled, where Congress has conditioned receipt upon the state waiving immunity from suit in federal court. M.A. ex rel. E.S. v. State-Operated Sch. Dist. of City of Newark, 344 F.3d 335, 345-46 (3d Cir. 2003). The test to determine whether a state has waived sovereign immunity is a "stringent" one. College Sav. Bank, 527 U.S. at 675-76. In the Third Circuit, three requirements must be met before a court can determine that a state has waived its sovereign immunity:

> (1) Congress must state in clear and unambiguous terms that waiver of sovereign immunity is a condition of receiving the gift or gratuity; (2) in accepting the gift or gratuity, states must exercise that choice knowingly and voluntarily, fully cognizant of the consequence—waiver of

Eleventh Amendment immunity; and (3) the federal program bestowing the gift or gratuity must be a valid exercise of Congress's authority. M.A. ex rel. E.S., 344 F.3d at 346.

Plaintiff states that "[u]ndoubtedly, the [Department of Education] receives federal funding as a gift or gratuity," but that "there has been no discovery conducted on the source of the federal funding or whether any of the above three (3) requirements have been met . . . ." (Pl. Br. at 4-5.) He contends only that discovery should be permitted to determine whether Defendant has waived its Eleventh Amendment immunity for violations of the ADEA.

It is well-settled that the plaintiff bears the burden of establishing subject matter jurisdiction in order to defeat a motion under Rule 12(b)(1). See Gould Elec., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000) ("The plaintiff has the burden of persuasion to convince the court it has jurisdiction."); Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991) ("When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." (citing Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977))). Here, Plaintiff has not carried his burden of demonstrating that New Jersey has waived sovereign immunity under the second exception. First, even assuming the Department of Education has received federal funds under the ADEA, which Plaintiff has not shown, general

9

receipt of federal funding is not sufficient to constitute a waiver of sovereign immunity. Edelman v. Jordan, 415 U.S. 651, 673 (1974); A.W. v. Jersey City Pub. Sch., 341 F.3d 234, 240 (3d Cir. 2003) ("[A] state does not waive its immunity merely by accepting federal funds."). As noted above, the Third Circuit requires Congress to state in "clear and unambiguous terms" in the statute that a waiver of sovereign immunity is a condition of receiving the gift or gratuity. The Supreme Court has similarly cautioned that that a waiver will be found "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" Edelman v. Jordan, 415 U.S. 651, 673 (1974) (quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171 (1909)). For example, the Third Circuit has held that Congress, when passing the Individuals with Disabilities Education Act ("IDEA"), validly conditioned the receipt of federal funds under the IDEA on the state's consent to waive its sovereign immunity where the statute explicitly stated that "A State shall not be immune under the 11th amendment to the Constitution of the United States from suit in Federal court for a violation of this chapter." M.A. ex rel. E.S., 344 F.3d at 346-47 (quoting 20 U.S.C.A. § 1403(a)). Similarly, the Supreme Court has held that the Rehabilitation Act Amendments of 1986 waived the states' Eleventh Amendment immunity when it contained

10

the following language: "A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 . . . ." Lane v. Pena, 518 U.S. 187, 198 (1996); Koslow v. Pennsylvania, 302 F.3d 161, 172 (3d Cir. 2002) (finding that Department of Corrections waived sovereign immunity against Rehabilitation Act claims by accepting federal funds under the Rehabilitation Act).

In this case, the ADEA does not contain any "clear and unambiguous" statement of intent to condition receipt of federal funding upon a waiver of sovereign immunity – and Plaintiff has not pointed to any provision in the ADEA that expresses such an intent. Although the Third Circuit has not passed upon the issue, at least two other circuits have held that the ADEA contains no "clear and unambiguous" terms showing Congressional intent to condition receipt of a gift upon the waiver of state sovereign immunity. See Sullivan v. Univ. of Texas Health Sci. Ctr. at Houston Dental Branch, 217 F. App'x 391, 394 (5th Cir. 2007) (ruling that Texas did not waive sovereign immunity because there is no "express language" nor "overwhelming implication from the text" of the ADEA showing state waiver of sovereign immunity); McGinty v. New York, 251 F.3d 84, 95 (2d Cir. 2001) (ruling that plaintiff had not established state waiver of sovereign immunity for ADEA claims due to lack of

showing that Congress had used "unmistakably clear language" to condition receipt of federal funding on state waiver). Cf. Cherry v. Univ. of Wisconsin Sys. Bd. of Regents, 265 F.3d 541, 554 (7th Cir. 2001) (noting that when Congress intends to condition receipt of federal funding on a state's waiver of sovereign immunity, "Congress 'must speak with a clear voice,' and do so 'unambiguously,' in order to 'enable the States to exercise their choice knowingly, cognizant of the consequences of their participation.'" (quoting Pennhurst State Sch. and Hosp. v. Halderman, 451 U.S. 1, 17 (1981))).

"[T]he basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot 'be established argumentatively or by mere inference.'" S. Freedman and Co., Inc. v. Raab, 180 Fed. App'x 316, 320 (3d Cir. 2006) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1206, at 78–79 (1969 & Supp. 2005)). Here, Plaintiff "bears the burden of showing Congress's unequivocal waiver of sovereign immunity." Freeman v. United States, 556 F.3d 326, 334 (5th Cir. 2009) (internal quotations and citation omitted). Plaintiff has not demonstrated that the "stringent" test for finding waiver of immunity has been met. He has not shown that New Jersey accepts federal funding under the ADEA, nor has he identified any language in the ADEA which expressly conditions receipt of federal funding upon a waiver of sovereign immunity. He has not

even attempted to argue that New Jersey accepted funding with the knowledge that it waived sovereign immunity, or that the program under the ADEA was a valid exercise of Congress' authority, under the second and third prongs of the test.

Because Plaintiff has not met his burden of establishing waiver of sovereign immunity, the Court will grant Defendants' motion under Rule 12(b)(1) for lack of subject matter jurisdiction, and dismiss the ADEA claim against the New Jersey Department of Education. See Lang v. Rubin, 73 F. Supp. 2d 448, 451 (D.N.J. 1999) (Simandle, J.) (dismissing for lack of subject matter jurisdiction because plaintiff had not demonstrated that exceptions to the Anti-Injunction Act applied).

The Court also rejects Plaintiff's request for discovery to determine whether waiver requirements have been met for purposes of establishing subject matter jurisdiction. The court has wide discretion in resolving jurisdictional factual disputes and is under no obligation to grant discovery to Plaintiff to help establish subject matter jurisdiction.  See NLRB v. Interstate Dress Carriers, Inc., 610 F.2d 99, 104 (3d Cir. 1979); Berardi v. Swanson Mem'l Lodge No. 48 of the Fraternal Order of Police, 920 F.2d 198, 200 (3d Cir. 1990) ("Trial judges enjoy substantial procedural flexibility in handling Rule 12(b)(1) motions."); CNA v. United States, 535 F.3d 132, 145-46 (3d Cir. 2008) (3d Cir. 2008) (noting that "the Court may dismiss for

13

lack of subject matter jurisdiction at any time, regardless of whether . . . the opposing party had an opportunity to conduct discovery." (citing Berardi, 920 F.2d at 200)). Moreover, "[t]he party seeking discovery bears the burden of showing its necessity." Freeman v. United States, 556 F.3d 326, 341 (5th Cir. 2009). A party is not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion. Id. at 342.

In the present case, Plaintiff had an opportunity to respond to Defendants' jurisdictional challenge but failed to present any facts in support of his contention that the Department of Education has waived sovereign immunity for ADEA claims. He has not demonstrated even a possibility that discovery would uncover facts that would establish subject matter jurisdiction, since, as noted above, there is no indication that the ADEA contains any language conditioning the receipt of federal funds on waiver of sovereign immunity in the "clear and unambiguous terms" required to show waiver. Nor has Plaintiff cited to a single case in support of providing discovery under these circumstances. The apparent futility of discovery to determine subject matter jurisdiction in this case would mean a needless expenditure of judicial resources if discovery were granted, and courts in this Circuit have

14

disfavored discovery to establish subject matter jurisdiction
where discovery would be unnecessarily burdensome or futile.
See, e.g., CNA, 535 F.3d at 145-46 (holding that district court
did not err as a matter of law by ruling on subject matter
jurisdiction without first granting discovery); Emerald
Investors Trust v. Gaunt Parsippany Partners, 492 F.3d 192, 203
(3d Cir. 2007) (stating that if the court were to adopt a rule
requiring jurisdictional discovery it would "aggravate the
burden on the litigants and the courts . . . ."); Lincoln Ben.
Life Co. v. AEI Life, LLC, 13 F. Supp. 3d 415, 425-26 (D.N.J.
2014) (holding that plaintiff was not entitled to discovery to
establish diversity jurisdiction, particularly where it has not
alleged diversity in good faith, and noting that judicial
economy counsels against providing jurisdictional discovery);
Everything Yogurt Brands, LLC v. M.A.R. Air Foods, Inc., No. 09-
4847, 2009 WL 3260629, at *2 (D.N.J. Oct. 9, 2009) (ruling that
the plaintiff was not entitled to discovery to establish
diversity jurisdiction because such discovery was unnecessarily
burdensome for the litigants and the court); Brownstein v.
N.Y.U. Med. Ctr., No. 94-907, 1994 WL 669620, at *6 (D.N.J. Nov.
22, 1994) ("Where, under the admitted facts, it appears that

further discovery will be futile to plaintiff's cause, the Court need not permit it.")[2]

Plaintiff makes only a general allegation about the receipt of federal funding and has not shown that discovery would uncover any facts that would establish that the Department of Education has waived sovereign immunity. Moreover, the facts Plaintiff seeks to uncover – presumably, whether New Jersey has voluntarily and knowingly accepted federal funds under the ADEA – are likely to already be in the public realm, and discovery will provide little benefit. The Court declines Plaintiff's request for jurisdictional discovery to overcome a defense of sovereign immunity.

## 2. ADEA claim against Peter Shulman in his official capacity

Plaintiff argues that his ADEA claim against Peter Shulman in his official capacity should not be dismissed because the

---

[2] The Court is also hesitant to grant discovery where the party seeking discovery is attempting to disprove the applicability of an immunity-derived bar to suit, since immunity is intended to shield a government defendant from the burdens of defending the suit, including the burdens of discovery. See Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982) (in qualified immunity context, stating that "[u]ntil th[e] threshold immunity question is resolved, discovery should not be allowed," because bare allegations should not suffice to subject government defendant to the "burdens of broad-reaching discovery" that can be "peculiarly disruptive of effective government."); Arriba Ltd. v. Petroleos Mexicanos, 962 F.2d 528, 534 (5th Cir. 1992) (observing the "tension between permitting discovery to substantiate exceptions to statutory foreign sovereign immunity and protecting a sovereign's or sovereign agency's legitimate claim to immunity from discovery").

doctrine of sovereign immunity contains an exception for claims against state officials requesting prospective injunctive relief for ongoing violations of federal law. Defendant argues that Plaintiff has not requested prospective relief in his complaint, and thus the claim does not fall under the prospective relief exception to sovereign immunity. This court finds Defendant's argument persuasive.

Because a suit against a state official is in essence a suit against the state, Eleventh Amendment sovereign immunity also protects state employees from suit in federal court, subject to a narrow exception. Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 254 (3d Cir. 2010). The Eleventh Amendment is no bar to "federal jurisdiction over a suit against a state official when that suit seeks only prospective injunctive relief in order to end a continuing violation of federal law." Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 73 (1996); see also Ex parte Young, 209 U.S. 123, 159-60 (1908). Although claims seeking prospective injunctive relief are permitted, claims that act as a remedy for past violations are barred under the Eleventh Amendment. Seminole Tribe, 517 U.S. at 73.

To determine whether the relief sought is prospective or merely to remedy past wrongs, the court must look to the substance of the relief requested rather than the form. Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698 (3d Cir. 1996). The

17

Supreme Court has not provided a clear answer for what constitutes prospective injunctive relief but has suggested that relief which does not merely order the cessation of conduct complained of but which requires an affirmative action on the part of the State would be barred. Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 691 (1949); Smith v. Sec'y of Dep't of Envtl. Prot. of Pa., 540 Fed. App'x 80, 82 (3d Cir. 2013). The Third Circuit has recognized that certain types of requested relief are not prospective, including "front pay" for lost earnings. Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 697 (3d Cir. 1996); DeHope v. New Jersey Dep't of Law & Pub. Safety, No. 11-3408, 2011 WL 6176220, at *3 (D.N.J. Dec. 12, 2011) (noting that damages in the form of "front pay" were meant to remedy a past wrong, namely termination from a position, and not to end ongoing violations of the law). The Third Circuit has also recognized, however, that "reinstatement" of an employee in a position from which the employee was fired does constitute prospective relief. See Koslow v. Pennsylvania, 302 F.3d 161, 179 (3d Cir. 2002).

In this case, Plaintiff has requested relief for "compensatory damages, punitive damages, interest, attorney's fees, costs of suit and such other relief as is just and equitable." (Compl. ¶ 29). Compensatory and punitive damages are designed to remedy a past wrong against the plaintiff, exactly

the type of relief barred by the Eleventh Amendment. See <u>MCI Telecomm. Corp. v. Bell Atl. Pennsylvania</u>, 271 F.3d 491, 506 (3d Cir. 2001) ("The relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective, such as money damages."); <u>Gattuso v. New Jersey Dep't of Human Servs.</u>, 881 F. Supp. 2d 639, 646 n. 5 (D.N.J. 2012) ("[B]ecause Plaintiffs are only seeking damages as a remedy, and are not suing to enjoin any officer of Defendant agencies to take any prospective action, the Court will not evaluate Plaintiffs' claims . . . ."). The interest, attorney's fees, and the cost of suit requested are related to the lawsuit and do not constitute prospective relief for ongoing violations of federal law. With respect to the request for "other relief as is just and equitable," Plaintiff has failed to specify the type of injunctive relief he seeks. (Compl. ¶ 29). Plaintiff alleged in his complaint a "longstanding history" of discriminatory practices but has not made clear what type of relief would correct future instances of this alleged practice. (<u>Id.</u> at ¶ 20.) As the Complaint does not seek any specific prospective, injunctive relief against Shulman which is not barred by the Eleventh Amendment, the ADEA claim against Shulman in his official capacity will be dismissed without prejudice.

**3. ADEA claim against Peter Shulman in his individual capacity**

Finally, Defendants argue that any ADEA claim against Shulman in his individual capacity must be dismissed because the ADEA does not provide for individual liability.

The Third Circuit has made clear that the ADEA does not permit claims for damages against officials sued in their individual capacity. Hill v. Borough of Kutztown, 455 F.3d 225, 246 n. 29 (3d Cir. 2006) ("[T]he ADEA does not provide for individual liability."); Rodrock v. Moury, 379 Fed. App'x 164, 166 (3d Cir. 2010) (affirming dismissal of claim under 42 U.S.C. § 1983 for violation of the ADEA because the ADEA does not allow claims for damages against individual defendants sued in their individual capacities); Farmer v. Camden Bd. of Educ., No. 03-685, 2005 WL 984376, at *9 (D.N.J. Mar. 28, 2005) (holding that ADEA prohibits individual liability). Plaintiff makes no argument for why, in light of the clear law in this Circuit holding that the ADEA does not provide for individual capacity suits, Shulman should remain as a defendant in his individual capacity.

The Court will therefore dismiss the ADEA claims against Peter Shulman in his individual capacity.[3]

---

[3] An individual may not be held liable unless he or she is an employer, defined under the ADEA as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . [or] any agent of such a person. . . ." 29 U.S.C.A. § 630(b); Acevedo v. Monsignor

## V. CONCLUSION

Defendants' motion to dismiss all claims against Shulman and the ADEA claim against the Department of Education will be granted. Count Three ("ADEA – Age Discrimination") will accordingly be dismissed, and Shulman will be dismissed as a defendant. An accompanying order will be entered.


July 13, 2015                          s/ Jerome B. Simandle
Date                                   JEROME B. SIMANDLE
                                       Chief U.S. District Judge


---

Donovan High Sch., 420 F. Supp. 2d 337, 344 (D.N.J. 2006) ("Unless an individual qualifies as a plaintiff's 'employer' as defined above, the ADEA does not provide for individual liability."). Because Shulman is not Plaintiff's "employer" within the meaning of the ADEA, any liability attributed to Shulman would stem from his role as an agent of the Department of Education, which is immune from suit in federal court under the Eleventh Amendment as explained above.